IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

**DAVID WINKS,**

 *Plaintiff,*

*v.*

**RENEWABLE ENERGY AGGREGATORS, INC.,**

 *Defendant,*

Case No.: 3:22-cv-00024

## ANSWER AND COUNTERCLAIM

COMES NOW Defendant, Renewable Energy Aggregators, Inc. ("REA"), by counsel, and provides this Answer to the Complaint filed by Plaintiff, David Winks ("Mr. Winks") and states as follows in support:

1. The allegations of Paragraph 1 are admitted.

2. The allegations of Paragraph 2 are admitted to the extent that REA is a Pennsylvania Corporation and that REA studies, designs, builds and manages renewable energy projects such as hydroelectric dams and solar energy generators across the United States. The remaining allegations of Paragraph 2 are denied.

3. The allegations of Paragraph 3 are admitted to the extent that Mr. Winks was an employee of REA with the title of Chief Science officer and worked from his home. The remaining allegations of Paragraph 3 are denied.

4. The allegations of Paragraph 4 are admitted to the extent that Mr. Winks was an employee of REA with the title of Chief Science officer. The remaining allegations of Paragraph 4 are denied.

5. The allegations of Paragraph 5 are admitted to the extent that Mr. Wink's was an employee of REA. The remaining allegations of Paragraph 5 are denied.

6. The allegations of Paragraph 6 are admitted to the extent that this Court has jurisdiction over the parties. The remaining allegations of Paragraph 6 are denied.

7. The allegations of Paragraph 7 are admitted to the extent that the venue is proper. The remaining allegations of Paragraph 7 are denied.

8. The allegations of Paragraph 8 are admitted to the extent that Mr. Winks was an employee of REA with the title of Chief Science officer. The remaining allegations of Paragraph 8 are denied.

9. The allegations of Paragraph 9 are denied.

10. The offer letter speaks for itself. To the extent a further response to the allegations of Paragraph 10 is required, those allegations are denied.

11. The allegations of Paragraph 11 are admitted to the extent that the parties executed an Employment Terms and Conditions document. Further, the Employment Terms and Conditions document speaks for itself. To the extent a further response to the allegations of Paragraph 11 is required, those allegations are denied.

12. The allegations of Paragraph 12 are denied.

13. The allegations of Paragraph 13 are admitted to the extent that Winks assisted in developing the Invention on behalf of REA. REA lacks sufficient information to admit or deny the remaining allegations of Paragraph 13. Therefore, those remaining allegations are denied.

14. The Application speaks for itself. To the extent a further response is required to the allegations of Paragraph 14, those allegations are denied.

15. The Application speaks for itself. To the extent a further response is required to the allegations of Paragraph 15, those allegations are denied.

16. The allegations of Paragraph 16 are admitted to the extent the Invention was developed by agents of REA and REA owns the Invention. Further, the Employment Terms and Conditions speaks for itself. To the extent a further response is required to the allegations of Paragraph 16, those allegations are denied.

17. The allegations of Paragraph 17 are admitted to the extent that Mr. Winks was provided with business cards. The remaining allegations of Paragraph 17 are denied.

18. The allegations of Paragraph 18 are admitted to the extent that REA informed Mr. Winks that he would receive further payment in the future and that REA sought a Paycheck Protection Program loan. The remaining allegations of Paragraph 18 are denied.

19. The allegations of Paragraph 19 are admitted to the extent that REA paid Mr. Winks $5,000 on both January 24, 2021 and March 8, 2021. The remaining allegations of Paragraph 19 are denied.

20. The allegations of Paragraph 20 are admitted to the extent that REA informed Mr. Winks his services would no longer be required on or about July 28, 2021. The remaining allegations of Paragraph 20 are denied.

21. The allegations of Paragraph 21 are denied.

22. REA restates its responses to the prior allegations.

23. The allegations of Paragraph 23 are admitted to the extent that Mr. Winks received two payments of $5,000 between October 31, 2020 and July 28, 2021. The remaining allegations of Paragraph 23 are denied.

24. The allegations of Paragraph 24 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

25. REA restates its responses to the prior allegations.

26. The allegations of Paragraph 26 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

27. The allegations of Paragraph 27 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

28. The allegations of Paragraph 28 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

29. The allegations of Paragraph 29 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

30. The allegations of Paragraph 30 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

31. The allegations of Paragraph 31 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

32. The allegations of Paragraph 32 contain legal conclusions to which no response is required. To the extent that a further response is required, those allegations are denied.

## Affirmative Defenses

1. Plaintiff's claims are barred for failure to state a claim upon which relief may be granted.

2. Plaintiff is not entitled to recover wages under Va. Code § 40.1-29.

3. Plaintiff's claims are barred by ambiguity.

4. Plaintiff's claims are barred by breach of contract by Plaintiff.

5. Plaintiff's claims are barred by fraud, deceit, or misrepresentation by Plaintiff.

6. Plaintiff's claims are barred by unclean hands.

7. Defendants reserve the right to supplement or amend these affirmative defenses as new information becomes available to them.

**WHEREFORE**, Defendants pray that the Court enter an order dismissing the Plaintiffs' Complaint and grant such further relief as this Court deems just and proper.

## COUNTERCLAIM

COMES NOW Defendant Renewable Energy Aggregators, Inc. ("REA"), by counsel, and states as follows as its Counterclaim against Plaintiff, David Winks ("Mr. Winks"):

### REA's Confidentiality Agreement With Acqusight, Inc.

1. REA is an energy aggregation company focusing on the design and facilitation of renewable energy sources and energy grid security. Generally, an energy aggregator is a business that bundle small and medium-sized power resources together as a single entity for the purposes of representation in the power services markets.

2. In or around early 2020, REA entered into discussions with Acqusight, Inc. about possible teaming to obtain contracts with third parties related to renewable energy technologies.

3. Acqusight, Inc. ("Acqusight") is a corporation formed under the laws of the Commonwealth of Virginia. Acqusight was founded, owned, and run by Mr. Winks.

4. On May 13, 2020, Acqusight and REA entered into a Confidentiality Agreement pursuant to their discussions. Confidentiality Agreement attached hereto as **Exhibit 1**.

5. The Confidentiality Agreement contemplates that Acqusight and REA would exchange proprietary information and trade secrets "for the purposes of enabling the other party to evaluate the feasibility of such business relationship." Exh. 1, p. 1.

6. The Confidentiality Agreement provides that proprietary information "shall use the Proprietary Information of the Disclosing Party only for [determining the feasibility of a further business relationship] and such Proprietary Information shall not be used for other purposes without the prior written consent of the Disclosing Party." Exh. 1, ¶ 3.

7. The parties also agreed that "Each of the parties hereto represents, warrants and covenants that the trade secrets which it discloses to the other party pursuant to this Agreement have not been stolen, appropriated, obtained or converted without authorization." Exh. 1, ¶ 5.

8. The parties further agreed that the recipient of proprietary information would have to, upon request, return all proprietary information and documents to the disclosing party and destroy all remaining copies of that information. Exh. 1, ¶ 6.

9. The Confidentiality Agreement provides that it remains in force and effect until the two-year anniversary of the signing of the agreement. Exh. 1, ¶ 7.

10. The Confidentiality Agreement further provides that "The Recipient agrees that any breach of this Agreement will cause the Disclosing Party substantial and irreparable injury and, therefore, in the event of any such breach, in addition to other remedies which may be available, the Disclosing Party shall have the right to specific performance and other injunctive and equitable relief." Exh. 1, ¶ 8(d).

### REA Hires Mr. Winks

11. On June 25, 2020, REA extended an offer for employment to Mr. Winks. Offer Letter attached hereto as **Exhibit 2**.

12. The Offer Letter states that Mr. Winks was to begin employment on August 1, 2020 and that he would be joining the executive team at REA. Exh. 2, p. 1.

13. The Offer Letter further makes clear that the offer to Mr. Winks was contingent upon the executions of the Terms and Conditions attached to, and made part of, the offer letter. Exh. 2, p. 2.

14. The Offer Letter was executed by Adam Rousselle, Sr. ("Mr. Rousselle") on behalf of REA on June 25, 2020 and by Mr. Winks on July 15, 2020. Exh. 2, p. 2.

15. As part of REA's offer to Mr. Winks, Mr. Winks also executed the Employment Terms and Conditions agreement ("Terms and Conditions"). Exh. 2, Terms and Agreement, pp. 3-8.

16. The Terms and Conditions state that all proprietary information, trade secrets, and confidential information that Mr. Winks would encounter during the course of his employment with REA could not be disclosed to third parties without REA authorization or misappropriated. Exh. 2, Terms and Conditions, ¶ 1.

17. The Terms and Conditions state that Mr. Winks was to devote all of his working time to working for REA's benefit and could not work on any side projects without REA authorization. Exh. 2, Terms and Conditions, ¶ 2.

18. The Terms and Conditions state that Mr. Winks was to keep all proprietary information was to be kept in confidence both before and after employment and used only for the benefit of REA. Exh. 2, Terms and Conditions, ¶ 3.

19. The Terms and Conditions state that all inventions, trademarks, and copyrights developed by employee during the duration of his employment belongs to REA. *Id.*

7

20. The Terms and Conditions mandated that all records, confidential information, and copies of documents were to be either returned to REA upon termination of employment. Exh. 2, Terms and Conditions, ¶ 6.

21. Under the Terms and Conditions, Mr. Winks stated that "I agree not to directly or indirectly solicit, for the purpose of offering or attempting to offer any service, product, or other application which is the same or similar to or offered in competition with the services, products or other applications offered or in the process of being developed by the Company within the last year prior to termination of my employment with the Company, any of the Company's customers for the duration of my employment and for a period of… twelve (12) months after termination of my employment." Exh. 2, Terms and Conditions, ¶ 7.

22. Mr. Winks further agreed to Non-Compete provision stating that he would not be employed by or own a competing business for the duration of 24 months following the termination of his employment with REA. Exh. 2, Terms and Conditions, ¶ 8.

23. The Terms and Conditions agreed to by the parties further recognize that "violation of Section 4, 7, or 8 of this Agreement will result in immediate and irreparable harm to the Company and that the Company will be entitled to an injunction or a degree of specific performance from a court of equity in addition to other rights or remedies which the Company may have at law or in equity." Exh. 2, Terms and Conditions, ¶ 12.

## Mr. Winks' Performance at REA

24. Mr. Winks began his employment with REA as an executive with the title of "Chief Science Officer" on August 1, 2020.

25. During his time in this role, Mr. Winks regularly shared proprietary information with third parties without authorization, misappropriated proprietary and confidential

information, directed potential business for REA to competitors, and acted as a competitor through Acqusight.

26. Throughout his employment, Mr. Winks continued to operate Acqusight as business competing with REA without authorization and even attempted to appropriate all or portions of contracts that REA was actively pursuing.

27. This included one of the largest and most potentially profitable projects that REA was pursuing during Mr. Winks' employment concerning designing and implementing improvements for the Fairfax wastewater treatment plant, which could have resulted in millions of profit for REA.

28. REA invested significant sums towards securing a contract with Fairfax to design and implement changes to the plant and Mr. Winks communicated with numerous individuals on behalf of REA in pursuit of the contract.

29. However, Mr. Winks also was working on behalf of Acqusight in pursuing a contract with the Fairfax wastewater treatment plant. This included arranging a teleconference with individuals related to the project without the knowledge of REA. In that meeting, Mr. Winks advertised his role in that meeting as the managing director of Acqusight, Inc. rather than as an agent of REA.

30. Mr. Winks further shared confidential and proprietary information with competitors without REA authorization related to the potential contract with the Fairfax wastewater treatment plant.

31. Mr. Winks also shared confidential and proprietary with competitors related to other projects, including information related to the potential development of a hydrogen peroxide

generating plant, a patent on a reactive processor patent, REA proprietary security analysis, grounding design guidelines, and other such information.

32. Mr. Winks' sharing of this confidential and proprietary information to competing businesses without prior REA authorization constitutes a violation of the provisions of the Terms and Conditions.

33. Mr. Winks also routinely used his Acqusight email to conduct REA business and used his REA email to conduct Acqusight business in violation of the Terms and Conditions.

34. REA frequently admonished Mr. Winks regarding his routine mixing of his unauthorized side projects and his duties with REA, directing of REA opportunities to competitors, and unauthorized disclosures to competitors.

35. On March 9, 2021, REA admonished Mr. Winks solicited business from an REA client.

36. On May 18, 2021, REA admonished Mr. Winks for using his Acqusight email address for REA business.

37. On May 26, 2021, REA admonished Mr. Winks for prioritizing competitor's projects over REA's and use of his Acqusight email for REA business. Mr. Winks was further ordered to stop speaking with other potential clients for Acqusight.

38. Mr. Winks was admonished on other occasions for sharing REA business secrets and his lack of transparency with REA on dealings with clients and competitors.

39. Mr. Winks' violations of the Terms of Conditions have caused REA irreparable harm.

## Mr. Winks' Termination and New Position

40.　On or about July 28, 2021, REA terminated Mr. Winks' employment due to his repeated breaches of his obligations under the Offer Letter and Terms and Conditions.

41.　Soon thereafter, Mr. Winks accepted employment with EMP Sheild, Inc., a business partner as well as a competitor with REA.

42.　On August 26, 2021, REA sent a letter to Mr. Winks advising him that he was in breach of his obligations under the non-compete and other provisions within both the Confidentiality Agreement and the Terms and Conditions. Letter to David Winks attached hereto as **Exhibit 3**. The letter further demanded that Mr. Winks resign from his position to honor his obligations under his agreements with REA.

43.　On August 26, 2021, REA also sent a letter to EMP Shield, Inc. advising it of Mr. Winks' obligations under his agreements with REA and demanding that Mr. Winks be terminated.

44.　Upon information and belief, Mr. Winks remains employed by EMP Shield, Inc.

## COUNT I – BREACH OF CONTRACT

45.　Defendant hereby realleges and incorporates by reference the allegations contained in preceding paragraphs as if fully set forth herein.

46.　On May 13, 2020, Mr. Winks entered into a contract with REA wherein he would be employed by REA and, in exchange, he agreed to noncompetition following his termination, nonsolicitation following his termination, to not disclose REA's confidential and proprietary information before and after his termination, and to not operate a side business during the course of his employment.

47. REA relied on its agreement with Mr. Winks when it decided to hire him and grant him access to REA's proprietary and confidential information.

48. REA fulfilled its obligations under the Terms and Conditions.

49. Mr. Winks breached his contract with REA when he repeatedly disclosed unauthorized proprietary and confidential information to third-parties without prior authorization, operated a competing business before and after his employment with REA, attempted to appropriate REA business, and directed REA business to competing businesses.

50. As a result of Mr. Winks' breach of the Terms and Conditions, REA has been damaged in the amount of at least $1 million.

## COUNT II: BREACH OF FIDUCIARY DUTY

51. Defendant hereby realleges and incorporates by reference the allegations contained in preceding paragraphs as if fully set forth herein.

52. As a corporate officer of REA, Mr. Winks owed REA a fiduciary duty to act in REA's best interest and to not divert corporate business opportunities for personal gain.

53. Mr. Winks routinely breached his fiduciary duty to REA by attempting to use REA proprietary and confidential information to direct REA business opportunities to his company Acqusight, Inc. and business competitors for personal gain.

54. This diversion of REA's business opportunities by Mr. Winks has caused REA significant damages in the amount of at least $1 million.

**WHEREFORE**, Defendant REA prays that the Court enter an order in its favor and against David Winks granting it the following relief:

    a. Compensatory damages in the amount of $2,000,000;

b. A temporary and permanent injunction barring Plaintiff from disclosing proprietary and confidential information gained from REA;

c. Such other and further relief to which he may be entitled.

Dated: May 13, 2022                         Respectfully submitted,

                                            RENEWABLE ENERGY AGGREGATORS, INC.,
                                            By counsel,

                                            */s/ Won Y. Uh*_____
                                            J. Chapman Petersen, Esq., VSB #37225
                                            Won Y. Uh, VSB #92574
                                            Chap Petersen & Associates, PLC
                                            3970 Chain Bridge Road
                                            Fairfax, Virginia 22030
                                            (571) 459-2512 (telephone)
                                            (571) 459-2307 (facsimile)
                                            jcp@petersenfirm.com
                                            wyu@petersenfirm.com
                                            *Counsel for Defendant*

**Certificate of Service**

    I hereby certify on May 13, 2022, a copy of the foregoing was electronically filed with the Clerk of Court and copies served via ECF system to the following:

John C. Cook, Esq.
Philip C. Krone, Esq.
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Rd #200
Fairfax, VA 22030
jcook@cookcraig.com
pkrone@cookcraig.com
*Counsel for Plaintiff*


      */s/ Won Y. Uh*
Won Y. Uh, Esq.
